IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ GONZÁLEZ-ORTÍZ and ALEXANDRA VEGA ROSARIO, **Plaintiffs,** v. PUERTO RICO AQUEDUCT AND SEWER AUTHORITY (PRASA); NORMAN J. TORRES-MAYSONET; HERIBERTO VÁZQUEZ-GARCÍA; and ÁNGEL MACHADO-PELLOT, **Defendants.** | CIVIL NO. 23-1509 (RAM) |

## OPINION AND ORDER[1]

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is co-Defendants Heriberto Vázquez García's ("Mr. Vázquez"), Ángel Machado Pellot's ("Mr. Machado"), and Norman Torres Maysonet's ("Mr. Torres") (collectively, "Defendants"),[2] *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* (the "*Motion to Dismiss*"). (Docket No. 21). For the reasons discussed below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' *Motion to Dismiss*.

---

[1] Elizabeth VanKammen, a rising 2L at UVA Law, assisted in the preparation of this Opinion and Order.

[2] Although Plaintiff files his *Complaint* against Defendants both in their personal and official capacities, Defendants move to dismiss only in their personal capacities. (Docket No. 21 at 1).

## I.    PROCEDURAL BACKGROUND

Plaintiff José González-Ortíz ("Mr. González-Ortíz" or "Plaintiff"),[3] filed his *Complaint* (Docket No. 1) on October 10, 2023, alleging that Defendants engaged in political discrimination against him in violation of the First Amendment of the United States Constitution; Article II, Sections 1, 2, 4, 6 and 7 of the Constitution of the Commonwealth of Puerto Rico; and Articles 1536, 1538, 1539, and 1540 of the Puerto Rico Civil Code. (Docket No. 1 ¶¶ 82, 85, 87-88). Plaintiff claims Defendants took discriminatory action against him because of his disinterest in participating in New Progressive Party ("NPP") political activities at and outside of work. (Docket No. 1 ¶ 84). The factual allegations relevant to Mr. González-Ortíz' claims are detailed *infra* in Section II.

Defendants timely filed their *Motion to Dismiss* on December 22, 2023.[4] (Docket No. 21). They argue that Plaintiff did not adequately allege each element of a prima facie case of political discrimination. Id. at 8. According to the *Motion to Dismiss*, Mr. González-Ortíz did not plead he and Defendants held opposing political beliefs because Plaintiff alleges political indifference on his part. Id. Defendants also contend that Mr. González-Ortíz

---

[3] Mr. González-Ortíz is joined in the *Complaint* by his common-law partner, Alexandra Vega-Rosario. (Docket No. 1 ¶¶ 13-14). For ease of reference, the Court uses the term Plaintiff to refer to Mr. González-Ortíz specifically and to refer to his position, which is shared with his co-plaintiff.

[4] Co-defendant Puerto Rico Aqueduct and Sewer Authority ("PRASA") filed an *Answer to the Complaint* (Docket No. 22) on the same date as the other Co-Defendants filed their *Motion to Dismiss*.

fails to state facts plausibly alleging each of the Defendants had knowledge of his political beliefs because he failed to directly inform them of his lack of party affiliation. Id. Third, Defendants maintain that "[f]alse accusations are not adverse employment actions" and none of Defendants' allegedly harassing conduct amounts to an adverse employment action. Id. at 9-11. Finally, since none of the Defendants had the authority to perform an investigation or terminate an employee pursuant to a Collective Bargaining Agreement, Defendants aver that they did not cause Plaintiff's termination. Id. at 12.

On January 12, 2024, Plaintiff filed his *Opposition to the Motion to Dismiss Filed by Defendants in Their Personal Capacity* (the "*Opposition*"). (Docket No. 26). Therein, Plaintiff restates all factual allegations contained in the *Complaint*. (Docket No. 26 at 2-14). Plaintiff argues (1) all elements of a prima facie case of political discrimination have been adequately pled, (2) the actions taken against Mr. González-Ortíz by Defendants constituted adverse employment actions, and (3) Defendants participated in and motivated Plaintiff's termination decision. Id. at 19, 21-25.

## II.  TIMELINE OF EVENTS IN THE COMPLAINT

Plaintiff asserts he was hired in a probationary role as an Information Technology ("IT") Technician for the PRASA Metro Region on September 23, 2019. (Docket No. 1 ¶¶ 19, 22). Mr. González-Ortíz alleges that a month after he was hired for this

role, the IT Auxiliary Director and superior, Mr. Torres, invited
Plaintiff to an NPP political event under the guise of it being an
"official work activity." Id. ¶ 21. Mr. González-Ortíz claims he
attended the activity hoping to engage with his co-workers, but
soon left after realizing the political nature of the event. Id.
Before leaving, he alleges he saw Messrs. Torres, Machado, and
Vázquez in attendance. Id. Plaintiff avers that he did not share
his discomfort regarding the event because he felt vulnerable as
a probationary employee. Id. ¶ 22.

A month later, Mr. González-Ortíz alleges Mr. Torres again
invited him to a "work related" activity that was actually a
political event for NPP, which Plaintiff again attended, observed
the three Defendants, and quickly left. (Docket No. 1 ¶ 23). Soon
after, Mr. Torres added Plaintiff to a WhatsApp group chat called
"the Aquatics," which Mr. González-Ortíz initially believed to be
a work social chat. Id. ¶ 24. Plaintiff claims he later came to
realize the Aquatics "was a structured informal organization of
the NPP within PRASA." Id.

In the first week of November 2019, Mr. Torres allegedly asked
Plaintiff for his electoral ID card so he "could fill endorsements
for the NPP candidates that the Aquatics were supporting," and
when Mr. González-Ortíz asked about the legitimacy of this
activity, Mr. Torres replied that Plaintiff's compliance with this
request would increase his chances of receiving a permanent

position. (Docket No. 1 paragraphs 26-27). Plaintiff alleges he
complied with the request because he "understood Torres-
Maysonet'[s] statement as a threat to his employment." Id. ¶ 26.
Without mentioning dates, Mr. González-Ortíz also alleges Messrs.
Torres and Vázquez repeatedly encouraged him to participate in NPP
activities to receive benefits at work. Id. ¶ 28.

On September 13, 2021, two years after Plaintiff had begun
his employment at PRASA, the IT Coordinator, Mr. Luis Colón, had
been approached by Messrs. Torres and Vázquez "to force him to
write a negative *Evaluation* for the Plaintiff so that the Plaintiff
would not receive his well-deserved permanency," and that Mr. Luis
Colón had done so out of fear of his superiors. Id. ¶ 31. Following
the intervention of Mr. González-Ortíz' union delegate, the
evaluation was discarded. Id. ¶ 33. Plaintiff alleges Messrs.
Torres and Vázquez intended to fill out a Probationary Period
Report "with false information to affect the Plaintiff's
appointment as a permanent worker." Id. ¶¶ 34-35. Instead, Mr.
Luis Colón properly completed the report at his home and notified
the Assistant Director of Labor relations "of what happened." Id.
¶ 35. On September 30, 2021 Mr. González-Ortíz received a permanent
position at PRASA. Id. ¶ 36.

As stated in the *Complaint*, following Plaintiff's permanent
appointment, his superiors allegedly made his time at work more
difficult by harassing him and changing his schedule at the last

minute because Mr. González-Ortíz did not participate in the NPP activities as requested. Id. ¶ 37. In response to these actions, Plaintiff claims he began participating in a human resources ("HR") program in April 2022 that was aimed at "help[ing] employees in the prevention, identification and adequate management of situations in their workplace." Id. ¶ 38. On May 11, 2022, following his participation in the program, Mr. González-Ortíz approached Mr. Torres to discuss Mr. Vázquez's harassment of Plaintiff. Id. ¶ 39. Before Plaintiff could initiate his complaint with his superior, Mr. Torres "in a passive-aggressive tone, said to him: 'You are here because you want to quit?'" to which Mr. González-Ortíz replied "No. It's not the time for that. Sorry to disappoint you," receiving a "guffaw" from Mr. Torres in response. Id. ¶ 40. Even so, Plaintiff asserts that he proceeded to talk to Mr. Torres about Mr. Vázquez' behavior. Id. ¶ 42. Mr. Torres allegedly assured Plaintiff that he would "address the situation." Id. However, Mr. González-Ortíz states that this conversation failed to effectuate a change in Mr. Vázquez's treatment of him. Id. ¶ 44.

On June 9, 2022, Mr. Vázquez instructed Plaintiff to visit a facility in Toa Alta the following day, leaving directly from his home. Id. ¶ 46. Mr. González-Ortíz requested that he be permitted to first stop at PRASA's headquarters to get the necessary tools for the work, to use an official PRASA vehicle for the travel to

Toa Alta, and to clock-in for the day. Id. ¶ 46. Mr. Vázquez
purportedly denied these requests. Id. ¶ 47. While working at the
Toa Alta facility, Plaintiff received a call from Mr. Vázquez
telling him to deliver machines to a facility in Arecibo. Id. ¶
48. Mr. González-Ortíz responded by stating he did not have the
tools necessary to complete that task, to which Mr. Vázquez
responded in a dismissive manner. Id. Plaintiff claims these
demands were "just the continuation of that pattern of
discriminatory abuse of authority[.]" Id. ¶ 49. He then called Mr.
Luis Colón twice, first to tell him about the new instructions he
had received as to the Arecibo facility, and again upon his arrival
at the facility to inform him of the impossibility of the task at
hand. Id. ¶¶ 50-51. During both calls, Plaintiff heard Mr. Vázquez
yelling in the background. Id. Attempting to do as he was told,
Mr. González-Ortíz tried completing the task by hand, breaking the
acrylic attached to the machine, and finally notifying Mr. Luis
Colón that he had completed his work at the Arecibo facility. Id.
¶¶ 52, 53. While traveling to PRASA's headquarters, Mr. Vázquez
instructed Plaintiff to return to the Arecibo facility to complete
additional tests on the equipment, but Mr. González-Ortíz stated
he could not do so as he did not have the necessary tools. Id. ¶
54. After this conversation, Mr. Luis Colón instructed Plaintiff
to return to Arecibo to complete the required equipment tests after
picking up the necessary tools from Headquarters, but Mr. González-

Ortíz was unable do so because he had to return his child to its mother in compliance with a court-imposed custody order. Id.

Upon arriving at PRASA's headquarters at 3:00 p.m. that afternoon, Plaintiff notified Mr. Luis Colón that he wished to have a meeting with all his superiors to discuss Mr. Vázquez's treatment of him. Id. ¶ 56. After looking for Mr. Torres, Plaintiff told Mr. Vázquez that he wanted to meet with Mr. Vázquez but was ignored. Id. ¶ 57. As Mr. Vázquez walked away, Mr. González-Ortíz "told him not to leave, because he needed to meet with him and his other superiors." Id. Plaintiff alleges Mr. Vázquez responded in a "threatening manner" Id. Mr. González-Ortíz "in a calm but firm manner, responded that the one who was being disrespectful was [Mr. Vázquez]." Id. After again telling Mr. Vázquez not to leave, he responded "be careful that the one who ends up leaving is you," after which Plaintiff took a few steps closer and asked Mr. Vázquez to repeat himself. Id. Mr. González-Ortíz claims this whole interaction took place at more than ten feet between himself and Mr. Vázquez and in front of witnesses. Id. Soon after, Messrs. Torres and Machado appeared, and Plaintiff informed them of his desire to have a meeting about Vázquez's abuse and harassment. Id. ¶ 58. When Mr. González-Ortíz arrived at Mr. Machado's office, he was told "to leave the premises, or else he would call security," and Plaintiff left without saying anything else. Id. ¶¶ 59-60.

On June 14, 2022, Plaintiff received (1) a memorandum titled "Refusal to perform work," stating Mr. González-Ortíz "refused to do the tasks he was asked for on June 10 because of personal matters not previously disclosed," and (2) a Request of Investigation against him "for the incidents that occurred on June 10," attaching a letter from Mr. Vázquez providing false information pertaining to the events of June 10th. Id. ¶¶ 61-62.

Mr. González-Ortíz had a meeting with Mr. Torres on August 3, 2022, during which he was informed that, contrary to what Mr. Vázquez had said, Plaintiff was performing well. Id. ¶ 63. Mr. Torres also told Plaintiff "to rest assured that things were going to change," to which Mr. González-Ortíz responded by sharing his interest in growing professionally within the department. Id. ¶ 64. Plaintiff claims Mr. Torres "responded that for that to happen he had to be loyal to him and participate in the NPP and the Aquatics activities," and shared that he "wanted to demote Mr. Luis Colón . . . from his position, because he felt he was not loyal to him." Id. Then, Plaintiff claims Mr. Torres "immediately asked the Plaintiff if he was going to support his group to lead the Aquatics in the upcoming elections." Id. Plaintiff states he responded, "he had no interest in those matters, that his only interest in PRASA was to work so that he could provide a better quality of life to his family." Id. However, Mr. Torres allegedly "insisted" that Plaintiff begin to participate in NPP and Aquatics

political activities in order to receive benefits and privileges at PRASA, such as acquiring the coordinator position in the IT department or being approved for preferred geographic placements. Id. Plaintiff once again expressed his disinterest "in those political affairs." Id. Mr. Torres appeared bothered by this comment. Id.

On August 15, 2022, Mr. González-Ortíz claimed he "received a totally biased Investigation Report," including statements only from those witnesses who are alleged to be "all NPP supporters and members of the Aquatics." Id. ¶ 66. The report recommended Plaintiff's summary dismissal for violation of the "*Collective Agreement* between the Plaintiff's union . . . and PRASA." Id. Plaintiff claims this conclusion was reached relying exclusively on Mr. Vázquez's statements and his witnesses. Id. PRASA's HR Department notified Plaintiff of these conclusions and his right to an administrative hearing on September 23, 2022. Id. ¶ 67. The *Complaint* states Plaintiff received his *Letter of Dismissal* on October 11, 2022. Id. ¶ 69. Plaintiff claims this dismissal was "discriminatorily" approved by Mr. Machado and motivated by political animus. Id. ¶ 70.

### III. Legal Standard

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint that "fails to state a claim upon which relief can be granted." Under Rule 12(b)(6), a plaintiff must plead enough facts

to state a claim that is "plausible" on its face, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Further, a complaint will not stand if it offers only "naked assertion[s] devoid of further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). To determine whether a complaint has stated a plausible, non-speculative claim for relief, courts must treat non-conclusory factual allegations as true. See Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013) (citations omitted).

## IV.  DISCUSSION

### A. Political Discrimination

To state a claim for political discrimination under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly showing: "(1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor

behind it." <u>Martinez-Velez v. Rey-Hernandez</u>, 506 F. 3d 32, 39 (1st Cir. 2007).

    i.  <u>Plaintiff plead facts plausibly asserting he holds political beliefs opposing those held by Defendants</u>

    Defendants argue in the *Motion to Dismiss* that Plaintiff has failed to adequately plead that he had political affiliations opposed to those held by the Defendants because "he admitted that he was not a militant of any political party." (Docket No. 21 at 8) (citing Docket No. 1 paragraph 25). Mr. González-Ortíz contends in his *Response* that he has sufficiently alleged individual Defendants' political affiliations with the NPP and the Aquatics, and that he himself "is not affiliated to any political party and has no interest in political affairs." (Docket No. 26 at 19) (citing Docket No. 1 ¶¶ 25, 27-28, 65).

    As determined by the following analysis, the Court finds Plaintiff has sufficiently alleged facts satisfying the first element of a section 1983 political discrimination claim.

    <u>a. Mr. González-Ortíz's political beliefs</u>

    It is well-established that "the First Amendment bars a government employer from taking adverse employment action against an employee 'solely for not being [a] supporter[ ] of the political party in power, unless party affiliation is an appropriate requirement for the position involved.'" <u>Welch v. Ciampa</u>, 542 F. 3d 927, 939 (1st Cir. 2008) (citing <u>Rutan v. Republican Party of</u>

Ill., 497 U.S. 62, 64 (1990)). The freedom to not associate "is integral to the freedom of association and freedom of political expression that are protected by the First Amendment." Welch, 542 F. 3d at 939 (citing Rutan, 497 U.S. at 76). Plaintiff here, in stating that "he had no interest in" NPP and Aquatics political activities, has sufficiently alleged his own political association as consisting of choosing not to affiliate. (Docket No. 1 ¶ 63).

A plaintiff must also adequately allege the opposing beliefs of **each** defendant against which he asserts his claims. *See* Grajales v. Puerto Rico Ports Auth., 682 F. 3d 40, 47 (1st Cir. 2012) ("The second amended complaint alleges that each of the defendants 'belong[s] to a different [political] party than [the plaintiff].' This is a specific factual allegation which, in itself, is adequate for pleading purposes. In connection with a threshold plausibility inquiry, a high degree of factual specificity is not required.").

a. Mr. Torres' political beliefs

Plaintiff asserts that Mr. Torres attended two NPP political events in October and November of 2019. (Docket No. 1 ¶¶ 21, 23). Mr. González-Ortíz also states that Mr. Torres requested his voting ID card in order to fill it out in support of NPP candidates. Id. ¶ 26. Additionally, Plaintiff alleges Mr. Torres repeatedly encouraged him to participate in NPP events. Id. ¶ 28. These factual allegations are sufficient to plausibly allege that Mr.

Torres was affiliated with the NPP, an affiliation opposed to Plaintiff's own self-described disinterest in political activity.

> b. <u>Messrs. Machado's and Vázquez's political beliefs</u>

Plaintiff's identification of Mr. Machado's political beliefs consists of the claims that Machado was present at both NPP events also attended by the other Defendants in October and November of 2019. (Docket No. 1 ¶¶ 21, 23). Other courts in this district have found it possible to infer a **defendant's** knowledge of a **plaintiff's** political affiliation when "she at times appeared along-side her husband **at his political events**." <u>Albino v. Mun. of Guayanilla</u>, 925 F. Supp. 2d 186, 195 (D.P.R. 2013) (emphasis added). Mr. González-Ortíz's claims that he saw Machado in attendance with other Defendants known to be NPP supporters at an NPP event is sufficient to plausibly allege Machado and Plaintiff had opposing political beliefs.

Plaintiff alleges that Mr. Vázquez also attended both NPP political events in October and November of 2019 and urged him to participate in NPP political events at various times. (Docket No. 1 ¶¶ 21, 23, 28). These statements are adequate to plausibly allege Mr. Vázquez had affiliations with the NPP opposed to Plaintiff's own non-affiliation.

> ii.  <u>Plaintiff fails to plausibly allege all Defendants
> had knowledge of his opposing political beliefs</u>

The second element of a political discrimination claim is
that "the defendant has **knowledge** of the plaintiff's affiliation."
<u>Martinez-Velez</u>, 506 F. 3d at 39 (emphasis added). Where a plaintiff
has **directly informed** a defendant of their political affiliations
or beliefs, courts have held defendants had knowledge of the
plaintiff's political beliefs. *See* <u>Falcon-Cuevas v. Puerto Rico
Ports Auth.</u>, 951 F. Supp. 2d 267, 275 (D.P.R. 2013) (noting that
a statement that plaintiff was an employee of a political party,
along with the fact that plaintiff had told defendant repeatedly
about her political affiliation, "is enough to satisfy the standard
required at the pleading stage."). However, another court in this
district has also found adequate knowledge of a plaintiff's
political affiliations to exist **where plaintiff was seen attending
political events**. <u>Albino</u>, 925 F. Supp. 2d at 195.

After analyzing Plaintiff's *Complaint* and past precedent, the
Court finds that the second element, knowledge of Plaintiff's
opposing political beliefs, is sufficient to survive the *Motion to
Dismiss* regarding claims against Defendants Messrs. Torres and
Vázquez but not Mr. Machado*.*

> a. <u>Messrs. Torres' and Vázquez's knowledge of
> Plaintiff's opposing political beliefs</u>

Mr. González-Ortíz alleges he told Mr. Torres he was not
interested in getting involved in politics relating to the NPP at

PRASA. (Docket No. 1 ¶ 64). Plaintiff also claims he "always refused to participate in [NPP] political activities because he was not interested in those affairs," and "[t]his response always visibly bothered co-Defendants Torres-Maysonet and Vázquez-García." Id. ¶ 28. These statements directly informed Defendants Messrs. Torres and Vázquez of Plaintiff's opposing political beliefs, plausibly asserting that Messrs. Torres and Vázquez had knowledge of those political beliefs.

### b. Machado's knowledge of Plaintiff's opposing political beliefs

Mr. González-Ortíz argues that his having stopped attending political events at which Machado was present and the close-quarters within which the IT Division of PRASA worked are sufficient to make it plausible Machado had knowledge of Plaintiff's opposing political beliefs. (Docket No. 26 at 21). In support of this argument, Plaintiff cites Morales v. Mun. of Las Marias, 2015 WL 8095429, at *4 (D.P.R. 2015).

In Morales, the plaintiffs lived:

> in a very small town where everyone knows the people's party affiliations; Plaintiffs participated in activities and motorcades for NPP candidates; Plaintiffs' personnel records show they were hired by an NPP administration, a fact easily ascertainable to [defendant] as head of Human Resources Department; Plaintiffs participated as election volunteers; and Plaintiffs had political bumper stickers on their cars and flags in their properties, among others.

2015 WL 8095429, at *4. These facts, taken as a whole, led the court to hold that "the information regarding Plaintiffs' political affiliation was potentially accessible to Defendants from sources other than Plaintiffs." Id.

Here, there are insufficient factual allegations plausibly evincing Mr. Machado possessed an awareness of Mr. González-Ortíz's political beliefs. Inferring that Plaintiff's discontinuation of attendance at political events was sufficient to inform Mr. Machado of his desires to remain politically indifferent requires the Court to make myriad assumptions not clearly supplied by the allegations contained in the *Complaint*. For example, the Court would first need to assume that Mr. Machado **saw** Mr. González-Ortíz at the NPP events in October and November, an allegation Plaintiff does not make. *See* (Docket No. 1 ¶¶ 21, 23). Then, that Mr. Machado himself continued to frequently attend NPP events at which Plaintiff was not present; again, Plaintiff provides no facts alluding to this. Finally, the Court would have to infer that Mr. Machado was **aware of Plaintiff's absence at these events** and **concluded from that absence** that Plaintiff held opposing political beliefs from himself. The trifecta of inferences that must be taken to arrive at this conclusion bear onto speculation and do not "knock on the plausibility door." Morales, 2015 WL 8095429, at *4.

It is well established that "notice pleading imposes minimal requirements on the pleader–but minimal requirements are not the same as no requirements at all." <u>Aponte-Torres v. Univ. P.R.</u>, 445 F.3d 50, 57 (1st Cir. 2006) (citing <u>Gooley v. Mobil Corp.</u>, 851 F. 2d 513, 514 (1st Cir. 1988)). Accordingly, a plaintiff is required to "at least set forth minimal facts as to who did what to whom, when, where, and why." <u>Aponte-Torres</u>, 445 F. 3d at 57 (internal quotations omitted) (quoting <u>Educadores Puertorriquenos en Accion v. Hernandez</u>, 367 F. 3d 61, 68 (1st Cir. 2004)). Although the Court reads all factual allegations set forth in the *Complaint* in a light most favorable to Plaintiff, "[t]he court need not conjure up unpled allegations or contrive elaborately arcane scripts in order to carry the blushing bride through the portal," and Plaintiff's allegations as to Mr. Machado require the Court to engage in more heavy lifting than the pleading requirements require. <u>Gooley</u>, 851 F. 2d at 514. For these reasons, Plaintiff fails to satisfy the knowledge prong regarding claims of political discrimination by Machado.

    iii. <u>Plaintiff plausibly alleges adverse employment action was taken against him</u>

    a. <u>Termination</u>

It is well-settled that termination of an employee constitutes an adverse employment action when establishing a claim for political discrimination. *See* <u>Torres-Rivera v. O'Neill-Cancel</u>,

598 F. Supp. 2d 331, 256 (1st Cir. 2008) ("An adverse employment action includes not only a discharge or a demotion, but also a government entity's refusal to promote, transfer, recall after a layoff, or even hire an employee.") (internal citations omitted); Ocasio-Hernandez v. Fortuno-Burset, 640 F. 3d 1, 13 (1st 2011) ("[P]laintiffs have adequately alleged that the termination of the plaintiffs' employment . . . constitutes an adverse employment action."). Plaintiff states in the *Complaint* that he was terminated on October 11, 2022, sufficiently pleading that an adverse employment action was taken against him. (Docket No. 1 ¶ 69).

> b. Pre-termination harassment

Mr. González-Ortíz also makes factual allegations about harassment by the Defendants prior to his termination. (Docket No. 1). Some types of informal harassment, like that alleged by Plaintiff, "can be the basis for first amendment claims if the motive was political discrimination; but this is so **only if the discriminatory acts are 'sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'**" Martinez-Velez, 506 F.3d at 42 (emphasis added) (quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F. 2d 1209, 1217 (1st Cir. 1989)). Actions are considered to rise to that level of severity "when the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position." Agosto-de-Feliciano, 889

F. 2d at 1218. Examples include: (a) loss of both supervisory status and independence at work, (b) change of duties accompanied by "new and inferior working conditions," (c) "permanent, or at least sustained, worsening of conditions," (d) retention of job duties but daily, harsh criticism without guidance and undesirable location transfer. Id. at 1219. Additionally, "[a]n adverse employment action includes not only a discharge or a demotion, but also a government entity's refusal to promote, transfer, recall after a layoff, or even hire an employee." Torres-Rivera, 598 F. Supp. 2d at 256 (citations omitted).

Mr. González-Ortíz alleges that superiors "increased in the form of harassing and intimidatory language, and last hour changes on working schedules, purposely made in bad faith to overwhelm the Plaintiff." (Docket No. 1 ¶ 37). During a conversation between himself and Mr. Torres, Plaintiff states he complained about Mr. Vázquez's "pressure, abuse, threats, and poor organization." Id. ¶ 42. Mr. González-Ortíz also claims Messrs. Torres and Vázquez twice attempted to issue negative evaluations of his performance "so that the Plaintiff would not receive his well-deserved permanency," though this evaluation was not used and did not prevent him from eventually obtaining his permanent appointment at PRASA. Id. ¶¶ 34-36. At another time, Plaintiff avers that he understood a statement by Mr. Torres instructing him to do what he

was told in order to increase his chance of obtaining a permanent position to be "a threat to his employment." Id. ¶ 26.

The series of events that took place between June 9 and June 10, 2022, also purportedly constitute a continuation of "the pattern of harassment and political discrimination" that Plaintiff faced. (Docket No. 1 ¶ 47). On those dates, Vázquez instructed Mr. González-Ortíz to complete assigned tasks without access to the necessary tools. Id. ¶ 48. When Plaintiff asked for guidance as to how he could accomplish his duties, Vázquez allegedly told him "[i]t doesn't matter, deal with the situation." Id. Following his failed attempts to complete the work, Plaintiff approached Vázquez and instructed him not to leave so that he may speak with him, and Vázquez told Plaintiff to "be careful that the one who ends up leaving is you." Id. ¶ 57.

These factual allegations plausibly show that Messrs. Vázquez and Torres engaged in behaviors resulting in unreasonably inferior work conditions, conditions which could plausibly be "'sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'" Martinez-Velez, 506 F.3d at 42.

> ### c. Plaintiff's complaints based on informal harassment actions are time-barred

Although Defendants do not themselves raise this issue, Plaintiff's claims based on informal harassment are time-barred.

"Because it has no internal statute of limitations, § 1983 claims 'borrow[] the appropriate state law governing limitations unless contrary to federal law.'" Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007) (quoting Poy v. Boutelis, 352 F. 3d 479, 483 (1st Cir. 2003)). The First Circuit has held that "the relevant statute of limitations for civil rights claims in Puerto Rico takes a **one-year limitation period** from P.R. Laws Ann. Tit. 31, § 5298(2)." Id. (citing Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F. 3d 1, 6 (1st Cir. 2005); Benitez-Pons v. Puerto Rico, 136 F. 3d 54, 59 (1st Cir. 1998)). Past precedent states that "§ 1983 claims accrue 'when the plaintiff knows, or has reason to know, of the injury on which the action is based.'" Marrero-Gutierrez, 491 F. 3d at 5 (quoting Guzman-Rivera v. Rivera-Cruz, 29 F. 3d 3, 5 (1st Cir. 1994)). The First Circuit has held a plaintiff has knowledge of a discriminatory act "at the time of the act itself and not at the point that the harmful consequences are felt." Id. (citing Chardon v. Fernandez, 454 U.S. 6, 8 (1981); Del. State Coll. V. Ricks, 449 U.S. 250, 258 (1980)).

Plaintiff commenced the present action on October 10, 2023. (Docket No. 1). The only discriminatory action that took place after October 10, 2022, and which is thereby within the statute of limitations, is Plaintiff's termination. (Docket No. 1 ¶ 69). Accordingly, Defendants *Motion to Dismiss* is **GRANTED** as to all adverse employment actions except Plaintiff's termination.

iv.  Plaintiff plausibly alleges adverse employment action
     was taken against him because of discriminatory animus

To satisfy the final element required to state a claim for
section 1983 political discrimination, Plaintiff must state facts
plausibly showing his political affiliation "was a substantial or
motivating factor" behind the adverse employment action. Martinez-
Velez, 506 F. 3d at 39. To satisfy this element, "*each* defendant's
role in the termination decision must be sufficiently alleged to
make him or her a plausible defendant." Ocasio-Hernandez, 640 F.
3d at 6 (emphasis in original) (citing Sanchez v. Pereira-Castillo,
590 F. 3d 31, 48 (1st Cir. 2009); Penalbert-Rosa v. Fortuno-Burset,
631 F. 3d 592, 594 (1st Cir. 2011)).

a. Defendants participated in the adverse action

The First Circuit has held as insufficient pleadings
describing the role of defendants in an adverse employment action
when "the complaint contain[ed] no allegations that these
individuals actually **participated in or condoned** the personnel
decision at issue here." Rodriguez-Ramos v. Hernandez-Gregorat,
685 F. 3d 34, 41 (1st Cir. 2012) (emphasis added). Pleadings have
been adequate where facts evince that the defendants participated
in conduct "**setting in motion a series of acts by others** which the
actor knows or reasonably should know would cause others to inflict
the constitutional injury." Sanchez, 590 F. 3d at 49 (emphasis

added) (quoting Gutierrez-Rodriguez v. Caragena, 882 F. 2d 553, 561 (1st Cir. 1989)).

Plaintiff alleges Messrs. Torres, Vázquez, and Machado worked together to effectuate Mr. González-Ortíz's termination because of Plaintiff's refusal to join or participate in Aquatics and NPP activities. (Docket No. 1 ¶ 72). Mr. González-Ortíz avers that following his interactions with Vázquez on June 10, 2022, he received notice of (1) a memorandum detailing Plaintiff's refusal "to do the tasks he was asked for on June 10," and (2) a *Request of Investigation*" presented to the Human Resources office "for the incidents that occurred on June 10." Id. ¶¶ 61-62. Plaintiff alleges the investigation request "contained a letter from co-Defendant Vázquez, narrating, with falsehoods, the events that took place that day." Id. ¶ 62. Taking Plaintiff's allegations to be true for the purposes of the *Motion to Dismiss*, Mr. González-Ortíz has made out a plausible claim that Vázquez's falsified report submitted to Human Resources was an action that should have been reasonably known to set in action Plaintiff's termination.

Plaintiff also plausibly alleges Mr. Torres' involvement in the *Request for Investigation* and the Human Resources investigation that took place per the request. (Docket No. 1 ¶¶ 64, 66-67, 69). Mr. González-Ortíz claims the dismissal was "discriminatorily approved" "following the **recommendation of co-**

**Defendants Torres-Maysonet and Vázquez-García.**" <u>Id.</u> ¶ 70 (emphasis added).

> b. <u>Plaintiff plausibly alleges his political beliefs were a substantial or motivating factor</u>

The First Circuit has held "that a politically charged employment atmosphere 'occasioned by the major political shift from the NPP to the PDP . . . coupled with the fact that plaintiffs and defendants are of competing political persuasions may be probative of discriminatory animus.'"[5] <u>Ocasio-Hernandez</u>, 640 F. 3d at 17-18 (quoting <u>Acevedo-Diaz v. Aponte</u>, 1 F. 3d 62, 69 (1st Cir. 1993)). Such a politically charged environment may consist of political flyers and logos "in full display and clear to employees," in combination with the common sharing of employees' political affiliations at work and repeated negative remarks about one political group and its adherents. <u>Ocasio-Hernandez</u>, 640 F. 3d at 18. In another case, discriminatory animus was found where a defendant gave a "disproportionate response to intemperate political speech." <u>Lamboy-Ortiz v. Ortiz-Velez</u>, 630 F. 3d 228, 238 (1st Cir. 2010).

Plaintiff alleges that early in his employment he was encouraged to participate in "official work activit[ies]" taking the form of NPP political events, and both Messrs. Vázquez and Torres were in attendance. (Docket No. 1 ¶¶ 21, 24). Following

---

[5] "PDP" or the "Popular Democratic Party" of Puerto Rico, is another major political party in Puerto Rico. <u>Ocasio-Hernandez</u>, 640 F. 3d at 4.

these events, Mr. González-Ortíz claims he was added to what he believed was "a co-workers social chat, but within time he understood that it was a political chat." Id. ¶ 24. Plaintiff avers that Mr. Vázquez's behavior toward him as related to the averments of June 10, 2022 "can only be understood as part of the pattern of harassment and political discrimination." Id. ¶ 47. These events depict the overt way in which employees and managers at PRASA went about engaging in political activities and sharing their political affiliations. Such behavior adequately describes a work environment that is "politically charged," thereby plausibly showing politically discriminatory animus was a substantial or motivating factor behind Messrs. Vázquez and Torres' actions against him in recommending his termination. Ocasio-Hernandez, 640 F. 3d at 17-18.

Plaintiff also alleges Mr. Torres displayed politically discriminatory animus in the past. Plaintiff states that Mr. Torres had expressed a desire to demote an employee who he did not feel was loyal to him or the NPP and encouraged Mr. González-Ortíz to begin participating in NPP events to gain employment benefits. Id. ¶ 64. This evinces Mr. Torres' willingness to make personnel decisions based on political affiliations. Plaintiff also alleges that early in his employment, both Messrs. Torres and Vázquez "confronted the Plaintiff asking if he had voted in the *Primary Elections*." Id. ¶ 27 (emphasis in original). The same two

Defendants also repeatedly encouraged Mr. González-Ortíz to participate in NPP activities "because said participation would greatly benefit Plaintiff in his employment at PRASA, and they needed employees who were loyal to them." Id. ¶ 28. Mr. González-Ortíz alleges his repeated refusal "always visibly bothered co-Defendants Torres-Maysonet and Vázquez-García." Id.

Plaintiff has plausibly alleged both Messrs. Torres and Vázquez were motivated by political animus in participating in conduct that resulted in his termination. Accordingly, Defendants' *Motion to Dismiss* as to Defendants Torres and Vázquez is **DENIED**.

**B. State Law Claims**

Plaintiff alleges violations of the Puerto Rico Constitution, §§ 1 (prohibiting discrimination on the basis of "race, color, sex, birth, social origin or condition, or political or religious ideas"), 2 (prohibiting "coercion in the exercise of the electoral franchise"), 4 (prohibiting laws abridging "the right of the people peaceably to assemble"), 6 (protecting the right to "join with each other and organize freely for any lawful purpose"), and 7 (securing the right to due process of the law and prohibiting the denial of equal protection of the laws). Puerto Rico Const. Art. II §§ 1-2, 4, 6-7. Under Puerto Rico law, violations of rights under the Puerto Rico Constitution may give rise to a claim under Puerto Rico's general tort statute. *See* Wiscovitch v. Cruz, 2022 WL 1272153, at *19 (D.P.R. 2022) ("Rights under the Puerto Rico

Constitution may be enforced though an action for damages under §
1802 of the Puerto Rico Civil Code.") (citing Colón v. Romero
Barceló, 112 D.P.R. 573, 579 (P.R. 1982)). Specifically, Plaintiff
cites to Articles 1536, 1538, 1539, and 1540 of the Puerto Rico
Civil Code. *See* (Docket No. 1 ¶¶ 87-88), 31 P.R. Laws. Ann. §§
10801, 10803, 10804, 10805. Defendants fail to raise any arguments
in opposition to these claims, instead requesting that the Court
dismiss them along with Plaintiff's federal causes of action.
(Docket No. 21 at 13).

    i.  Claims brought pursuant to the Puerto Rico Constitution and
       Civil Code are partially time-barred

The claims brought under the Puerto Rico Constitution and
Civil Code involve the Puerto Rico general tort statute. Prior to
2020, a one-year statute of limitations applied to Article 1802.
Id.; *see also* 31 L.P.R.A. § 5298 (applying a one-year statute of
limitations to "obligations arising from the fault or negligence
mentioned in § 5141 of this title, from the time the aggrieved
person had knowledge thereof"). After 2020, Article 1802 became
Article 1536. *See* QBE Seguros v. Moralez-Vazquez, 2023 WL 3766078,
at *3 (D.P.R. 2023) (citing Quiles Quiles v. United States, 2021
WL 5762950, at *1 n.1 (D.P.R. 2021)). Another court in this
district determined "no authority suggests the statute of
limitations has changed," and imposed a one-year statute of
limitations on claims asserted under Article 1536. QBE, 2023 WL

3766078, at *3. Although there is no official English translation for the 2020 edition of the Puerto Rico Civil Code, as interpreted by the courts, Article 1536 "dictates that 'any person who through fault or negligence, causes damage to another, is obliged to repair it.'" Dumanian v. FirstBank Puerto Rico, No. CV 22-1543 (CVR), 2024 WL 197429, at *3 (D.P.R. Jan. 17, 2024) (citing P.R. Laws Ann. tit. 31, § 10801; Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020)).

Accordingly, the Court applies the same one-year statute of limitations to Plaintiff's claims arising under Articles 1536, 1538-1540. As Plaintiff filed his initial complaint on October 10, 2023, any injury incurred by fault or negligence that took place prior to October 10, 2022 is time-barred. (Docket No. 1). The only factual allegation Mr. González-Ortíz states occurred within the statute of limitations is his termination. (Docket No. 1 ¶ 69).

To successfully plead a tort action under Article 1536, a plaintiff must plausibly allege: (1) a physical or emotional injury occurred, (2) there was "a negligent or intentional act or omission (the breach of duty element)," and (3) "a sufficient causal nexus between the injury and defendant's act or omission." González-Cabán v. JR Seafood Inc., 48 F.4th 10, 14 (2022) (quoting Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007)).

Plaintiff adequately alleges his emotional injury, stating "[a]s a result of González-Ortíz' discriminatory termination, Defendants have deprived González-Ortíz and his family, of the income and benefits by which González-Ortíz sustained himself and his family; have subjected them to personal pain and suffering." (Docket No. 1 ¶ 78). Mr. González-Ortíz also states that Defendants intentionally "punished" him for the "exercise of his civil rights by harassing him, retaliating against him, and discriminatorily terminating his employment." Id. These allegations also adequately plead a causal nexus between the Defendants' firing Plaintiff and the harm he suffered as a result of his loss of employment. The Court **GRANTS** Defendants' *Motion to Dismiss* as to any claims pertaining to conduct prior to October 10, 2022 and **DENIES** the *Motion to Dismiss* regarding Plaintiff's termination.

Past precedent identifies the right to employment as "a fundamental right and part of the right to dignity protected under the P.R. Constitution." Rivera-Cartagena v. Wal-Mart Puerto Rico, Inc., 767 F. Supp. 2d 310, 322 (D.P.R. 2011) (citing Arroyo v. Rattan Specialties, 17 P.R. Offic. Trans. 43, 117 D.P.R. 35 (P.R. 1986)). The same allegations that constitute a violation of the Puerto Rico Constitution, Article II § 1 are those that pertain to Plaintiff's section 1983 claims, discussed above. For the same reasons addressed *supra* in sections IV.A.i.-iv. of this Opinion, the Court **GRANTS** Defendants' *Motion to Dismiss* as to state law

claims against Mr. Machado and **DENIES** the *Motion to Dismiss* as to Defendants Torres and Vázquez.

### V.    CONCLUSION

For the above reasons, the Court hereby **ORDERS** that Defendants' *Motion to Dismiss* at Docket No. 21 is **GRANTED** in part and **DENIED** in part.

The section 1983 claim against Ángel Machado Pellot in his individual capacity is **DISMISSED WITH PREJUDICE.**

The Article 1536, 1538, 1539, and 1540 claims against Ángel Machado Pellot in his individual capacity are **DISMISSED WITH PREJUDICE.**

The Article 1536, 1538, 1539, and 1540 claims prior to October 10, 2022 against Defendants in their individual and official capacities are **DISMISSED WITH PREJUDICE.**

Plaintiff's section 1983 claims against Norman J. Torres-Maysonet and Heriberto Vázquez-García in their individual capacity; Puerto Rico state law claims against Norman J. Torres-Maysonet and Heriberto Vázquez-García in their individual capacity regarding Plaintiff's termination; and claims against the Puerto Rico Aqueduct and Sewer Authority and Norman J. Torres-Maysonet, Heriberto Vázquez-García, and Ángel Machado Pellot in their official capacities regarding Plaintiff's termination remain pending.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of August 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE